UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IAIN WATT                                                                      CIVIL ACTION

VERSUS                                                                          No. 22-3107

NEW ORLEANS CITY ET AL.                                          SECTION I

### ORDER & REASONS

Before this Court is a Federal Rule of Civil Procedure 12(b)(6) motion[1] to dismiss plaintiff Iain Watt's ("Watt") lawsuit, filed by the defendant, City of New Orleans ("defendant"). The defendant alleges that Watt fails to state a claim upon which relief can be granted.[2] For the reasons discussed below, the Court will grant the defendant's motion and dismiss Watt's federal law claims against the defendant.

### I. BACKGROUND

This case arises from an altercation between Watt, an officer with the New Orleans Police Department ("NOPD"),[3] and Charles Hoffacker ("Hoffacker"),[4] a sergeant with the NOPD.[5] On September 3, 2021, Watt was assigned to patrol with Sergeant Jamie Roach ("Roach").[6] While at the 8th district police station on that day, Roach instructed Watt to drive her to Harrah's Casino ("Harrah's) so that she could

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 16-1, at 2–3.
[3] R. Doc. No. 1, at 1–2.
[4] Hoffacker, in his individual capacity, is also a defendant. *Id.* ¶ 7. However, the only federal claims Watt's complaint alleges, counts I and II, are against the defendant City of New Orleans. *See id.* at 6–8. Additionally, the motion before the Court was filed only on behalf of the defendant City of New Orleans. *See* R. Doc. No. 16, at 1.
[5] R. Doc. No. 1, ¶ 7.
[6] R. Doc. No. 1-2, at 4.

use the Wi-Fi to perform her payroll duties.[7] Watt alleges that Hoffacker contemporaneously asked Watt to help him remove trash bags from the police station.[8] When Watt informed him that Roach had instructed Watt to drive her to Harrah's and, therefore, Watt could not assist Hoffacker, Hoffacker began making "loud verbal complaints."[9]

Watt drove Roach to Harrah's.[10] Watt alleges that, upon their arrival, he received a phone call from Hoffacker, who asked Watt where he was.[11] Watt informed Hoffacker that he was at Harrah's with Roach.[12] A short while after the phone call, Hoffacker arrived at their location on foot.[13] Watt further alleges that Hoffacker approached the police vehicle Watt and Roach were sitting in and "asked [Watt] to step out of the vehicle."[14] Watt states that Hoffacker then "removed his radio and gun from his body and threw them into the police [vehicle]."[15]

After Watt exited the police vehicle, "Hoffacker shoved [Watt] with both hands to the chest."[16] Watt then turned around to face the police car and Roach, and asked

---

[7] *Id.*
[8] R. Doc. No. 1, ¶ 10.
[9] *Id.*
[10] *Id.* ¶ 11.
[11] *Id.* ¶ 12. The narrative from the NOPD Incident Report states that Watt first "received a text message from an unknown phone number which read, 'hey dude. where y'at?' [Watt] replied, 'who is this?' [Watt] stated he then received a phone call form [sic] [Hoffacker] asking him where he was at and [Watt] advised he was at Harrah's Casino." R. Doc. No. 1-2, at 4.
[12] R. Doc. No. 1, ¶ 12.
[13] *Id.*
[14] *Id.* ¶ 13.
[15] *Id.* ¶ 14.
[16] *Id.* ¶ 15.

2

"Sarge, you seeing this?"[17] Watt then alleges that, after he addressed this question to Roach, Hoffacker struck him on the left side of his face with a closed fist[18] and, as a result, Watt's knees buckled and he fell to the ground, striking his head on the pavement.[19] After regaining his vision following his fall, Watt states that "he realized Hoffacker was on top of him, screaming in his face."[20]

Roach exited the vehicle and attempted to pull Hoffacker off of Watt, but was unable to do so.[21] Roach radioed for assistance, and several officers arrived from the 8th district police station and pulled Hoffacker and Watt apart.[22] Hoffacker was detained, and Watt was transported to Tulane Medical Center for treatment of his injuries.[23]

Watt's complaint further notes that, prior to the altercation on September 3, 2021, Hoffacker was assigned to administrative desk duty, "was relieved of his ability to operate a police unit and was not allowed to carry a firearm."[24]

## II.   STANDARD OF LAW

### A.   Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

---

[17] *Id.*
[18] *Id.* ¶ 16.
[19] *Id.* ¶ 17.
[20] *Id.* ¶ 18.
[21] *Id.* ¶ 19.
[22] *Id.* ¶ 20.
[23] *Id.* ¶¶ 21–22.
[24] *Id.* ¶ 23. The timing of such assignment is not stated in the complaint.

U.S. 544, 555 (2007); *see Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 570). If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original)).

In assessing a complaint, a court must accept all well-pleaded facts as true and construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). "[T]he Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, No. 08-5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 16, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). In assessing a complaint, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407

F.3d 690, 696 (5th Cir. 2005) (citing *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

The complaint "must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotations omitted). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (quotation marks omitted)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986) (alteration in original)).

### III.  LAW & ANALYSIS

#### A.  Counts I and II: Violations of 42 U.S.C. § 1983

Watt's complaint alleges two federal claims against the defendant: "unconstitutional policies, customs, usages, practices and procedures" in violation of 42 U.S.C. § 1983 (count I) and "excessive and unreasonable force" also in violation of § 1983 (count II). For the reasons discussed below, the Court finds Watt's complaint fail to plead sufficient facts to state a 42 U.S.C. § 1983 claim for municipal liability as to both counts I and II.

       *i.*      *Municipal Liability Pursuant to 42 U.S.C. § 1983*

A municipality may be subject to liability pursuant to § 1983 when the municipality maintains an unconstitutional policy or custom. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). These claims are sometimes referred to as "*Monell* claims," in reference to the Supreme Court case by that name. 436 U.S. 658. In order to state a claim against a municipal defendant for an alleged unconstitutional policy or practice, the plaintiff must allege that (1) an official policy (2) promulgated by a policymaker (3) was the moving force behind the violation of a constitutional right. *Hicks–Fields v. Harris Cnty.*, 860 F.3d 803, 808 (5th Cir. 2017) (citations omitted).

An "official policy or custom" giving rise to liability pursuant to *Monell* may be "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Esteves v. Brock*, 106 F.3d 674, 677 (5th Cir. 1997) (quotation omitted). However, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Pudas v. St. Tammany Par., La.*, No. 18-10052, 2019 WL 2410939, at *3 (E.D. La. June 7, 2019) (Barbier, J.) (alteration in original) (quoting *Colle v. Brazos Cnty., Tex.*, 981 F.2d 237, 245 (5th Cir. 1993)). To plausibly plead "a practice 'so persistent and widespread as to practically have the force of law,' ... a plaintiff must do more than describe the incident that gave rise to

6

his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A *Monell* claim may be based on a municipality's alleged failure to train, supervise, or discipline employees. *See id.* at 623. To state a claim that a municipality is liable for failing to train, supervise, or discipline an employee, the plaintiff must allege "(1) that the municipality's training, supervisory, or disciplinary policies or practices were inadequate, (2) that the municipality was deliberately indifferent in adopting [these] deficient polic[ies], and (3) that the inadequate training, supervisory, or disciplinary polic[ies] directly caused the violations in question." *Hankins v. Wheeler*, No. 21-1129, 2022 WL 2208848, at *7 (E.D. La. June 21, 2022) (Fallon, J.) (citing *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir. 2020)).

"Deliberate indifference" can be shown in two ways: "First and most often, deliberate indifference generally requires notice of a pattern of similar violations at the time the plaintiff's own rights were violated . . . . Second, we have noted that in narrow circumstances, when a constitutional violation results as the highly predictable consequence" of a municipality's failure to properly hire, train, supervise, or discipline, "the failure [] can amount to deliberate indifference." *Robles v. Ciarletta*, 797 F. App'x 821, 833–34 (5th Cir. 2019).

With regards to the first means of showing deliberate indifference, the Fifth Circuit has held that "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Livezey v.*

7

*City of Malakoff*, 657 F. App'x 274, 278 (5th Cir. 2016) (quotation and citation omitted).

Regarding the second method of showing deliberate indifference, the plaintiff must allege that the "highly predictable consequence" of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009). "An injury is 'highly predictable' where the municipality 'fail[s] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face.'" *Hankins*, 2022 WL 2208848, at *7 (quoting *Hutcheson*, 994 F.3d at 482−83). Similarly, in order to establish liability for a failure to supervise, "it must have been obvious that the highly predictable consequence of not supervising [the employees] was that they would" commit the specific constitutional violation alleged. *Peterson*, 588 F.3d at 850.

Importantly, in the absence of any underlying constitutional violation, there can be no municipal liability under *Monell*. *See Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (noting that because there was no constitutional violation, there can be no *Monell* claims); *Brown v. Wilkinson Cnty. Sheriff Dep't*, 742 F. App'x 883, 884 (5th Cir. 2018) (holding that because the plaintiff failed to demonstrate an underlying constitutional violation, the claims against the county and the officers in their official capacities failed); *Harris v. Serpas*, 745 F.3d 767, 774 (5th Cir. 2014)

(upholding the district court's dismissal of the *Monell* claims because the plaintiffs had not shown there was a constitutional violation).

>    ii.   Count I: "Unconstitutional Policies, Customs, Usages, Practices and Procedures"

Count I of Watt's complaint alleges that the defendant violated Watt's "right to be on a public street, to be left alone in his duty to protect the City, to due process of law, to equal protection of the law, to freedom from unreasonable arrest, search and seizure, and freedom from excessive force, and freedom from cruel and unusual punishment protected under the First, Fourth, Eighth and Fourteenth Amendments."[25] The defendant, Watt further alleges, "failed to properly hire, train, supervise, and discipline"[26] Hoffacker and other NOPD officers, and had knowledge of the deficiencies in their hiring, training, supervisory, and disciplinary policies and practices "by way of the DOJ's Report, the Consent Decree, and the multitude of

---

[25] R. Doc. No. 1, ¶ 37. Watt's complaint does not specify which right is protected by which Amendment. While "[t]he Court has made every effort to identify and evaluate each of [Watt's] claims . . . . 'judges are not pigs, hunting for truffles buried in briefs[.]'" *Woods v. Cantrell*, No. 20-482, 2021 WL 981612, at *19 (E.D. La. Mar. 16, 2021) (Africk, J.). Moreover, it appears that plaintiff's counsel adopted a thoughtless, "throw everything at the wall and see what sticks" approach in drafting his complaint, including a smattering of constitutional claims which have no basis in law or fact. For instance, the complaint alleges violations of Watt's Eighth Amendment rights. *See.* R. Doc. No. 1, ¶¶ 37, 49. However, the U.S. Supreme Court and the United States Court of Appeals for the Fifth Circuit have held that "the Eighth Amendment 'was designed to protect those convicted of crimes.'" *Johnson v. City of Dallas, Tex.*, 61 F.3d 442, 444 (5th Cir. 1995) (quoting *Ingraham v. Wright*, 430 U.S. 651 (1977)); *cf. Palermo v. Rorex*, 806 F.2d 1266, 1271 (5th Cir. 1987), *cert. denied*, 484 U.S. 819 (1987) ("The cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction."). Watt was never arrested, convicted, or incarcerated, and therefore the protections of the Eighth Amendment are inapplicable.
[26] R. Doc. No. 1, ¶ 38.

reports issued by the Independent Monitor[.]"[27] Watt then asserts that the defendant "acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional and civil rights of plaintiff through its lack of policy that led to and failed to prevent the misconduct of Defendant Hoffacker[.]"[28] Watt further asserts that he was "directly harmed by Defendant City's failure to properly hire, train, supervise and discipline . . . because these deficiencies led to [] Hoffacker's attack on Watt"[29] and violations of his constitutional rights.

As previously mentioned, to state a viable *Monell* claim for failure to adequately hire, train, supervise, and discipline, Watt must allege well-pleaded facts that raise a right to relief above the speculative level, i.e., a facially plausible claim. The elements of such a claim are: (1) that the defendant's hiring, training, supervisory, or disciplinary policies or practices were inadequate, (2) that the defendant was deliberately indifferent in adopting these deficient policies, and (3) that the inadequate policies directly caused the violations Watt alleges. *See Hankins*, 2022 WL 2208848, at *7.

In order to establish deliberate indifference, the second element of a *Monell* claim, count I of Watt's complaint relies upon the portions of the February 17, 2021

---

[27] *Id.* ¶ 42.
[28] *Id.* ¶ 46.
[29] *Id.* ¶ 43.

Consent Decree[30] Monitor Report[31] ("the Report") describing deficiencies in the defendant's supervision policies as evidence that defendant had "notice of a pattern of similar violations at the time the plaintiff's own rights were violated," *Robles*, 797 F. App'x at 833. According to Watt, the defendant failed to correct deficiencies leading to those violations,[32] including the constitutional violations Watt alleges herein.[33]

The Fifth Circuit has stated that the existence of the Consent Decree is not a basis for asserting deliberate indifference. "To the contrary, the fact that the City entered into a Consent Decree suggests that the City recognized that a problem

---

[30] "In May 2010, the United States Department of Justice notified the City [of New Orleans] it was initiating an investigation into the [NOPD] for an alleged pattern or practice of unlawful misconduct . . . . On July 24, 2012, the Department of Justice and the City jointly moved for this Court to enter a negotiated Consent Decree." *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 267 (E.D. La. 2021) (Morgan, J.). "The purpose of the Consent Decree is 'to protect the constitutional rights of all members of the community, improve the safety and security of the people of New Orleans, and increase public confidence in the New Orleans Police Department.'" *Id.* (quoting Case No. 21-1924, R. Doc. No. 565). The Consent Decree requires the City of New Orleans and the NOPD "'to implement new policies, training, and practices throughout the Department, including in the areas of: use of force; stops, searches, seizures, and arrests; photographic lineups; custodial interrogations; discriminatory policing; community engagement; recruitment; training; performance evaluations; promotions; officer assistance and support; supervision; secondary employment; and misconduct-complaint intake, investigation, and adjudication.'" *Id.*
[31] A Consent Decree Court Monitor ("Monitor") was appointed and, among other responsibilities, periodically issues reports on the City of New Orleans' and NOPD's progress in addressing the areas of concerns noted above, *supra* note 30, "to the Court and to the public on a regular basis, ensuring a transparent and rigorous process." *United States v. City of New Orleans*, 35 F. Supp. 3d 788, 793 (E.D. La.), *aff'd*, 731 F.3d 434 (5th Cir. 2013).
[32] R. Doc. No. 1, ¶ 42 (The defendant was "aware of the deficiencies and the need to properly hire, train, supervise and discipline its officers by way of the DOJ's Report, the Consent Decree, and the multitude of reports issued by the Independent Case Monitor" but the defendant "ignored that need and acted unreasonably and with deliberate indifference and disregard for [] Watt's constitutional rights . . . .")
[33] *Id.* ¶ 40.

existed and agreed to remedy it. That is hardly consistent with demonstrating 'deliberate indifference' on the City's part."[34] *Gomez v. Galman*, 18 F.4th 769, 779 (5th Cir. 2021). Additionally, the Report "fails as sufficient evidence of deliberate indifference," as it merely "gestures broadly" at issues NOPD has and does not specifically address the conduct at issue here. *Id.* His reference to the DOJ investigation results in the same type of pleading failure. *See* n.30. As Watt offers no other factual allegations to substantiate his argument that the defendant was deliberately indifferent to the inadequacy of its policies, count I of his complaint fails to state a claim for relief pursuant to 42. U.S.C. § 1983.[35]

### iii. Count II: "Excessive and Unreasonable Force"

Count II of Watt's complaint asserts that Hoffacker "abused the official powers bestowed upon him by [the defendant] by ordering Mr. Watt out of the car and using unreasonable and excessive force as recompense for what Hoffacker perceived as a slight."[36] Watt then asserts that the defendant's "failure to properly hire, train, supervise and discipline [] Hoffacker in the proper use of force stems from its official policy of hiring and retaining unqualified officers to increase the numbers of the

---

[34] Indeed, if the fact that the defendant entered into a Consent Decree could be used against it, the defendant could be deterred from entering into one in the first place.
[35] As Watt has failed to sufficiently plead facts indicating the defendant was deliberately indifferent, the Court need not address whether Watt has satisfied the first and third elements of a *Monell* claim, i.e., whether the defendant's hiring, training, supervisory, or disciplinary policies were inadequate, and whether the defendant's inadequate policies were the direct cause of the harm he suffered.
[36] R. Doc. No. 1, ¶ 50.

12

NOPD's ranks, and its deliberate indifference to rectifying historical problems that have plagued the NOPD."[37]

This alleged failure to properly hire, train, supervise, and discipline, Watt further alleges, "includes deliberate overlooking of Defendant Hoffacker's egregious pattern of behavior, a pattern which is partially to blame for his status of 'Desk Duty[.]'"[38] The "deliberate indifference" on the part of the defendant "allowed and failed to prevent the commission of these unlawful acts of exerting authority to perpetuate excessive force on [] Watt in direct deprivation of his constitutional rights"[39] protected by the First, Fourth, Eighth, and Fourteenth Amendments.[40]

As discussed with regards to count I, while Watt has alleged the existence of inadequate policies, Watt cannot establish that the defendant was deliberately indifferent solely on the basis of the Consent Decree, DOJ investigation, or the Report; Watt likewise fails to plead deliberate indifference in count II by alleging that the defendant had notice of a pattern of similar use of "unlawful and unreasonable force"[41] by Hoffacker, as Watt pleads no facts to support the existence of such a pattern of behavior.

To establish deliberate indifference, "a plaintiff may allege that the municipality had '[n]otice of a pattern of similar violations,' which were 'fairly similar

---

[37] *Id.* ¶ 51.
[38] *Id.* ¶ 52.
[39] *Id.* ¶ 54.
[40] *Id.* ¶ 49. Specifically, Watt alleges violations of his "right to be left alone, to due process of law, to equal protection of the law, to freedom from unreasonable force and to freedom from cruel and unusual punishment." *Id.*
[41] *Id.*

13

to what ultimately transpired.'" *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir.2010)). While "[t]he number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies[,]" *Moreno v. City of Dallas*, No. 13-4106, 2015 WL 3890467, at *8 (N.D. Tex. June 18, 2015), the Fifth Circuit has held that allegations of twenty-one previous incidents of individuals killed by a police officer was insufficient to establish a pattern. *Saenz*, 637 F. App'x at 832. The court reasoned that, "[w]ithout further context surrounding the circumstances, the allegations of prior shootings do not plausibly suggest a pattern of abuses to which the City was deliberately indifferent." *Id.*; *see also Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (finding that twenty-seven instances of alleged excessive force was insufficient to establish a pattern in the absence of information providing context, such as the police department's size and total number of arrests made in relevant period). The Fifth Circuit concluded that, "[w]ithout some further factual enhancement, [the plaintiff's] complaint 'stops short of the line between possibility and plausibility.'" *Saenz*, 637 F. App'x at 832 (quoting *Twombly*, 550 U.S. at 546).

In the instant case, Watt provides no specific examples of past similar conduct by Hoffacker, nor does he offer evidence that Hoffacker's past "egregious" behavior was for similar assaultive behavior, as opposed to other dissimilar misconduct. Furthermore, Watt does not offer context with respect to the number of alleged instances of such conduct and when they occurred. As pleaded, the "allegations do not

allow the court to draw the reasonable inference that" Hoffacker's assault on Watt was "anything more than [an] isolated incident[]." *Saenz*, 637 F. App'x at 832.

The fact that Hoffacker was assigned to administrative desk duty and was not allowed to drive a police vehicle or carry a weapon is insufficient to establish a pattern of similar violations—namely, that Hoffacker previously engaged in assaultive behavior against others. Watt's complaint contains no allegations as to why Hoffacker was assigned to desk duty, beyond asserting that Hoffacker engaged in an "egregious pattern of behavior[.]"[42] For instance, Watt offers no facts indicating that administrative desk duty is a disciplinary action typically imposed by the NOPD for such assaultive behavior. Moreover, the fact that prior to this incident Hoffacker was assigned to desk duty and was relieved of his ability to use a police vehicle and carry a firearm indicates that the defendant was *not* indifferent to his misconduct and instead took disciplinary action to reprimand him.

The single-incident exception is also inapplicable. To fit within this "extremely narrow" exception, Watt must show "that the highly predictable consequence of a failure [to train or supervise] would result in the specific injury suffered." *Valle*, 613 F.3d at 549. Hoffacker's assault was not "highly predictable," as the situation that gave rise to the altercation was not one that "concern[ed] a clear constitutional duty implicated in recurrent situations that [Hoffacker was] certain to face.'" *Hankins*, 2022 WL 2208848, at *7 (quoting *Hutcheson*, 994 F.3d at 482−83). Hoffacker acted pursuant to his own private aim—to get retribution against Watt for declining to help

---

[42] *Id.* ¶ 52.

15

Hoffacker take out the garbage—and not pursuant to his official duties as a law enforcement officer.

Moreover, "[t]he single-incident exception 'is generally reserved for those cases in which the government actor was provided no training whatsoever.'" *Hutcheson*, 994 F.3d at 483 (quoting *Peña*, 879 F.3d at 624). Watt does not allege that Hoffacker received no training whatsoever, but that the defendant failed to "properly" train Hoffacker,[43] or "deliberate[ly] overlook[ed]" Hoffacker's "egregious pattern of behavior."[44]

Watt has therefore failed to adequately plead facts to support a finding that the defendant was deliberately indifferent to the inadequacy of its policies, either under the theory that the defendant had knowledge of a pattern of similar conduct or under the single-incident exception. Accordingly, count II of Watts' complaint fails to state a *Monell* claim against the defendant pursuant to 42 U.S.C. § 1983.[45]

### B.    Counts III–VII: State Law Claims

Only Watt's state law claims of assault and battery (count III), intentional infliction of emotional distress (count IV), negligent hiring (count V), negligent retention and supervision (count VI), and vicarious liability, *respondeat superior*,

---

[43] *Id.* ¶ 38.
[44] *Id.* ¶ 52.
[45] As Watt has failed to sufficiently plead facts indicating that the defendant was deliberately indifferent, the Court need not address whether Watt has satisfied the first and third elements of a *Monell* claim, i.e., whether the defendant's hiring, training, supervisory, or disciplinary policies were inadequate, and whether the defendant's inadequate policies were the direct cause of the harm he suffered.

ostensible agency and/or agency (count VII) remain.[46] Watt urges the Court to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a),[47] over these state law claims. Section 1367(a) "is a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

A district court may decline to exercise supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "A district court has wide discretion when deciding whether it should retain jurisdiction over state law claims once all federal claims have been eliminated. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011). The general rule in the Fifth Circuit is to dismiss state claims when the federal claims to which they are pendent are dismissed. *Id.* The Fifth Circuit has also instructed district courts to consider the common law factors of "judicial economy, convenience, fairness, and comity." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008). "These interests are to be considered on a case-by-case basis, and no single factor is dispositive." *Id.*

The above considerations weigh in favor of dismissal without prejudice of the Louisiana state law claims so that the plaintiffs may assert those claims in Louisiana

---

[46] R. Doc. No. 1, ¶¶ 56–93.
[47] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

17

state court. The Court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Moreover, allowing Louisiana courts to rule on Louisiana law encourages fairness between the parties by 'procuring for them a surer-footed reading of applicable law.'" *Fountain v. New Orleans City*, No. 18-145, 2018 WL 3475375, at *2–3 (E.D. La. July 19, 2018) (Africk, J.) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (citations omitted)). "[D]eference in this case with respect to the state law issue[s] promotes the important interest of comity to state courts." *Id.* Furthermore, "the parties will not be unduly prejudiced because the litigation is still in its early stages." *Carney v. New Orleans City*, 468 F. Supp. 3d 751, 768 (E.D. La. 2020) (Africk, J.). Accordingly, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

### III. CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** that the defendant's motion to dismiss is **GRANTED**. The plaintiff's federal law claims, as set out in counts I and II, are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the plaintiff's state law claims, as set out in counts III–VII, are **DISMISSED WITHOUT PREJUDICE** to their being timely asserted in state court.

New Orleans, Louisiana, December 22, 2022.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE